~~SEALED~~

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE



FILED
MAR 10 2021
US DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Criminal Action No. 21-cr-11 (UNA) |
| KHALIL RODRIGUEZ-FITZGERALD, | : | ~~FILED UNDER SEAL~~ UNSEALED |
| Defendant. | : | 10/21/21 KJK |

**MEMORANDUM IN SUPPORT OF THE GOVERNMENT'S MOTION FOR DETENTION**

The defendant has been charged with possession of a firearm by a prohibited person. The Indictment alleges that he possessed that gun for three days. But possessing that gun was just the tip of the iceberg. The defendant has possessed many more weapons, and committed other serious criminal offenses, over the course of the last several months. Given his criminal history, the acute danger he currently poses, his recent interstate flight from police, and his transient nature, the defendant must be detained to ensure public safety and his appearance in court.

**LEGAL STANDARD**

The provisions of the Bail Reform Act are well known to the Court. *See* 18 U.S.C. § 3142. The court must detain the defendant if it finds that either (a) there is clear and convincing evidence that no combination of conditions will ensure the safety of the community if he is released, or (b) the preponderance of the evidence demonstrates that no combination of conditions will ensure the appearance of the defendant as required. 18 U.S.C. §§ 3142(e) & (f). *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986) (holding that the standard for determining

1

whether or not the defendant is a risk of non-appearance under § 3142(e) is a "preponderance of the evidence").

There are four statutory factors that a court must consider in determining whether the defendant should be detained pending trial under § 3142. In particular, the court must examine: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. §§ 3142(g)(1) - (4). In considering these factors, the court is not bound by the "rules concerning the admissibility of evidence." 18 U.S.C. § 3142(f). Indeed, at a detention hearing, either party may proceed by proffer. *See United States v. El Hage*, 213 F.3d 74, 82 (2d Cir. 2000).

## ARGUMENT

A consideration of the factors set forth at 18 U.S.C. § 3142(g) demonstrates the defendant is both a risk of flight and a danger to the community.

### A. 3142(g)(1) – the Nature and Circumstance of the Offense

The first factor for the Court to consider under § 3142(g) is the "nature and circumstance of the offense charged," including whether the offense involves a "firearm." 18 U.S.C. § 3142(g)(1).

#### 1. Possession of a Glock on February 11

The defendant has been indicted for possessing a Glock 19X handgun from February 8, 2021 until February 11, 2021. On February 11, 2021, law enforcement found that handgun in the nightstand of a hotel room where he had been staying with his girlfriend for the previous two nights. Also inside the nightstand was approximately $1,800 in cash. Although the hotel room

was rented in his girlfriend's name, the defendant personally went into the hotel office on February 10, 2021 to pay for the final night in cash, and he was frustrated when he was told that he could not personally rent the room because he had no identification. Based on surveillance, only he and his girlfriend spent the night in that room on February 10, 2021. And when law enforcement searched the defendant's phone, they found that he had been sent a video of the same gun on February 7, 2021. The gun that was seized, and a still from the February 7, 2021 video, are below:




The defendant's hands are not the hands in the video. Law enforcement believes based on its investigation that the defendant obtained that gun on February 8, 2021.

### 2. Possession of Other Guns on Social Media

The defendant is no stranger to guns. His social media profiles are filled with images of him possessing guns, money, drugs, and in one case offering a gun for sale. He had two accounts:

3

"_Duttaman" ("the _Duttaman Account") and "GG_fatsino" ("the GG_fatsino Account"). Both include known nicknames for him and he is in the profile photograph for both.

On September 16, 2020, the below photo was posted to the _Duttaman Account and included the comment "I never seen a money truck chaze a hearse." While the subject cannot be identified, he is wearing the same sweatshirt as in below photos and has the same build as the defendant. He has what appears to be a semi-automatic firearm in his left hand.



On September 29, 2020, the below photo was posted by the _Duttaman Account and included the location tagging of Washington, D.C. The defendant appears to be wearing the same or a similar jacket as the above photograph.

4



On October 8, 2020 the below image was posted as an Instagram Story by the _Duttaman Account with the caption "You niggas worry about my wayyyyy to much we see who getting money and who ain't, I ain't mad at nobody." One subject is seen to be holding what appears to be a semi-automatic firearm in his right hand while displaying a gang-sign with his left hand while the defendant is holding cash in both hands (again, wearing the same black jacket).



On October 16, 2020, the below photo was posted by xxnsgbeenhavin with the location tagged as Monroe, North Carolina. The defendant is tagged in this photo using the _Duttaman Account and holding what appears to be a semi-automatic firearm in his left hand.

6



On October 27, 2020, a video was posted on Instagram Live by the _Duttaman Account where the defendant was seen displaying what appears to be the grip of a firearm with an extended magazine along with United State currency. Although this is not visible in the screen shot below, in the beginning of the video, on the table in front of the defendant, there are two small baggies of a white substance, packaged like a small amount (likely an eighth of an ounce) of cocaine. One of the comments to the post includes "my bro just caught a bodyyyy." an expression that commonly refers to someone having committed a murder. Below is a screenshot from the video.



On November 5, 2020, a video was posted to the Instagram story of the _Duttaman Account wherein the defendant can be seen holding what appears to be a semi-automatic firearm in his right hand. A red laser can be seen coming from the firearm during the video (but is not visible in the photograph). Below is a screen shot taken from the posted video.



On December 9, 2020, the _Duttaman Account posted a live video in which the defendant brandishes what appears to be a firearm.  On a table next to him, there is what appears to be a large stack of cash and a handgun (the below screenshot does not show the cash and handgun).

9



On December 17, 2020, the _Duttaman Account posted a live video in which the person taking the video is showing what appears to be a shotgun in their left hand with the text "Remington saw-off shotgun for safe gwm."



On January 6, 2021, on his "gg_fatsino" Account, the defendant posted "this ain't government money this shit off the bobby, my phone do 4 stimulus checks a day ain't no way I'm waiting around for the government." The context appears to refer to making money selling drugs and to the fact that his drug customers – who he likely contacts by phone ("my phone do 4 stimulus checks a day") – pay him more than the government would.

11



On February 8, 2021, the below live video was posted by the "gg_fatsino" Account. In the video, the defendant can be seen holding up what appears to be a semi-automatic firearm. During the live video, but not shown below, the defendant can also be seen holding a small plastic bag and being approached by an older man through his window in a meeting consistent with a drug deal.

12



Once the defendant was arrested and agents searched the phone that was found in his possession, they found more indicia of drug dealing. Namely, on February 8, 2021, the following photograph was taken with the defendant's phone and appears to show a crack rock on a digital scale:



All of this activity indicates that the defendant possesses and even sells guns, and likely also sells drugs. He possesses large amounts of cash for which he otherwise has no explanation. When he was under law enforcement surveillance, he did not appear to have a steady job, as discussed more below.

**B.    3142(g)(2) – the Weight of the Evidence**

The weight of evidence in this case is strong given the defendant's proximity to the gun and the video in his phone. The defendant has already been indicted; a grand jury panel found probable cause that the defendant committed the offense.

### C.  3142(g)(3) – the Defendant's Criminal History and Characteristics

In his mid-20's, the defendant is already a multiple-time felon. He is also unstable and transient, and has recently evaded police, as explained below.

The defendant has been convicted of two serious offenses. He was convicted of possession of heroin with intent to distribute in 2013, sentenced to probation, and then reoffended while on probation. He was convicted of carrying a concealed deadly weapon in 2015 and spent two years in prison as a result. He has been arrested for very serious offenses in 2019 and 2020 (possession of a weapon during the commission of a felony during which a firearm was discharged, and attempted robbery), but those charges did not result in convictions. The defendant's history is serious and includes drug and gun activity, which is consistent with his recent conduct.

The defendant was under investigation for months. As part of that investigation, law enforcement was trying to find a residence for him. They were unable to. By the time of the defendant's arrest, agents learned that he was at least occasionally residing at a home in Chester, but when they searched that house pursuant to a warrant, the residence appeared to be more of a temporary location, for which he was renting a room. Clothing in his size was found in that room, but there was also clothing in another man's size, and mail in another man's name. The clothing was mostly piled up around the floor of the room and in the closet. There was a single inflatable bed in the room. In the past, the defendant has identified himself as being homeless to the State of Delaware.

During the investigation, the defendant was shifty. He frequently changed cars, often driving cars rented in a woman's name and keeping them for a week or two. On February 8, 2021, the day he posted the above-referenced Instagram Live video and the day he picked up the firearm

he is charged with possessing, he returned one of his rental cars and began driving a different car in a female's name. On February 10, 2021, Delaware State Police attempted to pull him over in a Toyota Camry, and he fled from police over the border into Pennsylvania, successfully evading the stop.

In short, the defendant has a history of committing crimes, and is also a serious risk of non-appearance based on his transient lifestyle.

### D.  3142(g)(4) – the Nature and Seriousness of the Danger to a Person or the Community

The threat posed by the defendant is manifest based on his history, in terms of his prior criminal history, his braggadocious and taunting social media presence, and his recent interstate flight from police. There are no conditions the court could put in place that would mitigate that risk.

### CONCLUSION

For all of the above reasons, the United States respectfully requests that the Court grant its Motion for Detention Pending Trial.

    Respectfully submitted,

    DAVID C. WEISS
    UNITED STATES ATTORNEY

BY:   /s/ Jennifer K. Welsh
    Jennifer K. Welsh
    Daniel Logan
    Assistant United States Attorneys

Dated:  March 9, 2021